UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

       Plaintiff,

       v.                                Crim. No. 05-355-HA

UHURU NAVANDA CREWS,          OPINION AND ORDER

       Defendant.

_____

HAGGERTY, Chief Judge:

Defendant Uhuru Crews is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Defendant has filed a Motion to Suppress Evidence [23] that was obtained by Portland Police after conducting a search of an apartment pursuant to a warrant and subsequently interviewing defendant. This court held an evidentiary hearing regarding this motion on June 6, 2006, at which Portland Police officers Strohmeyer, Devlin, Shirahama, and McConnell testified. For the following reasons, defendant's motion is GRANTED.

PAGE 1 - OPINION AND ORDER

## BACKGROUND

Shortly after 2 a.m. on July 2, 2005, Portland Police officer Erik Strohmeyer attempted to stop a 1985 Oldsmobile Cutlass being driven by defendant. According to the officer, defendant failed to signal a turn. The officer activated his vehicle's overhead lights and siren but defendant sped away. After a short vehicular chase, defendant jumped from his moving automobile. Officer Strohmeyer followed him on foot, and another police vehicle pursued defendant as well. The officers in this vehicle testified that they briefly lost sight[1] of the defendant as he crossed the front yard of the house at 8527 SE Claybourne Street. Defendant was arrested shortly afterwards.

Defendant was advised of his constitutional ("*Miranda*") rights, which he waived verbally. Defendant then admitted that he decided to flee from police due to an outstanding arrest warrant in the state of Washington. Defendant was unaware that the warrant was non-extraditable.

Arresting officers found nothing of evidentiary interest on defendant. They impounded and inventoried the Oldsmobile, cited defendant for traffic violations, and arrested him for attempting to elude the police. Defendant was released later that morning.

Officer Peter McConnell of the Portland Gang Enforcement Team began investigating the case. Officer McConnell suspected that defendant may have discarded a firearm as he ran from the police, but an initial search of the arrest area was unsuccessful. Officer McConnell requested an additional search of the area, specifically the front yard of 8527 SE Claybourne.

---

[1]There is factual inconsistency regarding whether officers lost sight of defendant during this pursuit. Initial police reports fail to disclose losing sight of defendant; later reports refer to a three- to five-second period when officers lost sight of defendant.

Shortly after noon on July 2, 2005, an officer found a .22 caliber revolver near where defendant had been arrested.  Defendant's fingerprints were not found on the revolver.

The registered owner of the Oldsmobile that defendant had been driving is Ms. Ebonique Manus.  Manus resides at 6731 SE 82nd Avenue, Apartment 3 ("Apt. 3").  Defendant's driver's license lists a different address as his residence.

On July 5, Officer McConnell drove through Manus's apartment complex and observed defendant leaving the complex as a passenger in a vehicle.  At the evidentiary hearing, Officer McConnell conceded that from his vantage point, he could not identify which apartment defendant had visited.

On July 6, Officer McConnell observed Manus and defendant walk away from an area near Apt. 3's doorway.  He also observed them leave the apartment complex in a 1984 Pontiac.

Based on these facts and his experience as a police officer, Officer McConnell prepared an affidavit in support of a search warrant.  The application sought a search scope that included defendant's person, Apt. 3, the Pontiac, and the Oldsmobile.  The warrant targeted .22 caliber ammunition, cleaning kits, magazines, and items to show possession, dominion, and control of the vehicles and premises.

Multnomah County Circuit Judge Maureen McKnight granted the warrant on July 14, 2005.

Shortly after Judge McKnight signed the warrant, it was executed.  Defendant was detained and handcuffed by police in a parking lot near the apartment complex.  He was advised of his *Miranda* rights, which he waived.  Officer McConnell then read defendant the search warrant.

PAGE 3 - OPINION AND ORDER

Defendant denied living at Apt. 3. He asserted that Manus and her three children lived there. When asked if there were any guns at the apartment, defendant replied, "I don't think so." Government's Memo in Opp. to Def.'s Motion to Suppress Evidence & Statements (hereinafter "Government's Memo") at 4. Officers found nothing of evidentiary value on defendant's person.

Additional officers approached Apt. 3 as Manus was leaving in the Pontiac. She identified defendant as her boyfriend and explained that he had lived with her for about six weeks. She denied that guns were in the apartment. Manus and defendant were subsequently transported to Portland's Northeast Police Precinct.

While searching Apt. 3, Officer McConnell found a two-shot .38 caliber Derringer in a dresser drawer containing women's underwear. On top of this dresser was a laser sight and a wallet containing defendant's identification.

After the search Officer McConnell interviewed defendant. Defendant claimed that he did not live at Apt. 3, but was there approximately seventy percent of the time. Government's Memo at 5. He denied owning the Derringer, and asserted that it belonged to Manus. He acknowledged that he had seen it before and that his fingerprints could be on it.

Officer McConnell explained to defendant that the warrant stemmed from defendant's attempt to elude police on the night of July 2, 2005, and the subsequent discovery of a gun along defendant's path that night. Defendant claimed that he ran from the police because of an outstanding arrest warrant, and because he possessed a gun, which he admitted carrying for someone else. The government concedes that "defendant's statements were derivative evidence from the execution of the search warrant at the apartment." Government's Memo at 5.

///

**STANDARD**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause." A magistrate's determination of probable cause may be reversed only upon a finding of clear error. *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993); *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990).

Items and information obtained as a result of an invalid search warrant are excluded from evidence. *Mapp v. Ohio*, 367 U.S. 643 (1961). This exclusionary rule applies to direct and indirect "fruits" of unlawful searches. *Wong-Sun v. United States*, 371 U.S. 471, 484 (1963).

In determining whether probable cause exists, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A magistrate must have a substantial basis for determining probable cause, and reviewing courts should pay "great deference" to the magistrate's determination. *Id.* at 236; *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994).

Additionally, a magistrate must find a "reasonable nexus" between the facts supporting probable cause and the locations to be searched. *Pitts*, 6 F.3d at 1369. By itself, probable cause that a crime has been committed is not necessarily sufficient to obtain a warrant to search a home. *Id.* (citation omitted). The affidavit must also demonstrate "reasonable cause" indicating that the items sought through the warrant will be found in the location to be searched. *Id.*

The warrant's scope must be no broader than the probable cause that supports it. *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990). Police may search a location for evidence of a crime without having probable cause to arrest the persons present at that location. *United*

PAGE 5 - OPINION AND ORDER

*States v. Hay*, 231 F.3d 630, 635 (9th Cir. 2000).

The "good faith" rule articulated in *United States v. Leon* provides an exception to the exclusionary rule.  468 U.S. 897, 923 (1984).  "Evidence need not be suppressed when police obtain the evidence through objective good faith reliance on a facially valid warrant that is later found to lack probable cause."  *Id.*

However, the good faith exception does not apply when a reasonably trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.  *See Malley v. Briggs*, 475 U.S. 335 (1986); *Greenstreet v. County of San Bernardino*, 41 F.3d 1306, 1310 (9th Cir. 1994).

## ANALYSIS

Defendant moves to suppress all evidence obtained from the search of Manus's apartment and all statements made during his interview following the execution of the search warrant. Defendant argues that the warrant was not supported by probable cause and that the good faith exception is inapplicable.  Defendant also argues that his seizure and detention after the execution of the warrant was unlawful.

The government concedes that police obtained defendant's inculpating statements as to the .22 caliber revolver found on July 2, 2005 as a result of the search warrant.  Accordingly, if the warrant was unsupported by probable cause and is not saved by the good faith exception, those statements are the "fruit" of an unlawful warrant and consequently are inadmissible.

      1.    **No Probable Cause for Search Warrant**

Defendant asserts that Officer McConnell's affidavit was "padded" with extraneous and irrelevant material to give a false appearance of probable cause.  Such a tactic is improper

PAGE 6 - OPINION AND ORDER

because it can mislead the magistrate and makes it difficult to ascertain what crimes are being

investigated or what evidence is being sought.  *See United States v. Sartin*, 262 F. Supp. 2d

1154, 1160 (D. Or. 2003) (noting that the magistrate was unable to recognize the defect in the

warrant due to a "forest of irrelevant and sometimes misleading information").

Here, the affidavit contains a significant number of references to the crimes of attempt to

elude police and felon in possession of a firearm.  However, for the reasons provided below, this

court concludes that after sorting through the affidavit's details, no probable cause is provided to

justify the search of Apt. 3.

a.      <strong>Attempt to Elude Police</strong>

Attempting to elude police is committed if a person operates a motor vehicle and

knowingly flees or attempts to elude a police officer who has given a visual or audible signal for

the vehicle to stop.  ORS 811.540(1).

In his warrant application, Officer McConnell sought "items of identification" that would

evince defendant's possession, dominion, and control of the vehicles and apartment in reference

to the crime of attempting to elude police.  These items were sought from defendant's person, in

Apt. 3, and in both vehicles.

However, police officers had already obtained any necessary evidence of this crime from

their encounter with defendant on July 2, 2005.  Defendant failed to stop his vehicle at an

officer's request, jumped from his moving vehicle, and fled on foot from pursuing officers.  At

the evidentiary hearing, officers conceded that these facts sufficiently established an attempt to

elude the police.  The items listed in the warrant were superfluous.  Accordingly, the warrant

was invalid as it pertained to this crime.

b.      **Felon in Possession of a Firearm**

Police did not obtain any evidence from the search of defendant's person or of the two

vehicles.  There is no exclusionary issue relating to those searches.  This court now concludes

that no probable cause existed for the search of Apt. 3 for evidence of the crime of felon in

possession of a firearm.

Officer McConnell's affidavit in support of the search warrant for Apt. 3 relies upon the

discovery of the .22 caliber revolver that police recovered along the path defendant took when he

fled from the police.  Police found the revolver approximately ten hours after defendant fled

from police.  The firearm did not have defendant's fingerprints on it, and, during surveillance of

the area, police did not see anyone return to attempt to recover it.

By itself, the discovery of a .22 caliber revolver along the path defendant took while

attempting to elude police is insufficient evidence to generate probable cause to search Apt. 3.

In some cases, involving certain crimes, residential searches may be justified.  For example,

when a defendant suspected of dealing drugs is found with drugs on his person, police may have

probable cause to believe that more drugs will be found at defendant's residence. *Pitts*, 6 F.3d

1369 (finding a reasonable nexus between the activity of dealing drugs and the defendant's

residence).

However, in this case, inferring a connection between defendant, the .22 caliber revolver,

and Apt. 3 does not present a "fair probability" that additional firearms or evidence of possession

of firearms would be found at Apt. 3.  Moreover, Officer McConnell failed to establish a

reasonable nexus between the crime and the apartment.  The apartment searched was not the

address on defendant's driver's license.  Officer McConnell did not check the lease to confirm

PAGE 8 - OPINION AND ORDER

whether defendant was a tenant.  Officer McConnell saw defendant in and around the apartment complex only twice, and he never saw defendant enter or leave Apt. 3.

The Fourth Amendment strictly protects the sanctity of the home or residence.  *See Maryland v. Garrison*, 480 U.S. 79, 90 (1987) (extending Fourth Amendment protection to apartments).  Here, Officer McConnell's affidavit does not establish probable cause to violate the privacy of Manus's apartment.

2.      **The "Good Faith" Exception Does Not Apply**

Nevertheless, the government argues that the evidence at issue should be admissible under the good faith exception.  *Leon*, 468 U.S. at 923.  This argument is unavailing.

The good faith exception applies when an officer's reliance on the validity of the warrant is objectively reasonable.  *Id.*  The exception does not apply when the affidavit that supports the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Id.*; *United States v. Hove*, 848 F.2d 137, 139 (9th Cir. 1988).

As noted above, the affidavit in support of the search warrant lacked probable cause.  A reasonable officer could not have relied on the magistrate's decision to grant the warrant.  Police had already gathered sufficient evidence for the crime of attempting to elude police.  No additional indicia were present to validate a search of defendant's person, the vehicles or Apt. 3.

Additionally, the evidence connecting the crime of felon in possession of a firearm to Apt. 3 is insufficient to validate a reasonable reliance.  Officer McConnell's affidavit contained superfluous information that was misleading to the magistrate and insufficient to establish probable cause for the searches.  *Sartin*, 262 F. Supp. 2d at 1160.  The affidavit could not have reasonably provided the magistrate with a substantial basis for finding probable cause.

3.        **Defendant Was Not Illegally Detained**

Defendant argues that his detention pursuant to the search warrant was illegal.  A police officer may rely upon his or her experience when determining probable cause for making an arrest.  *United States v. Hoyos*, 892 F.2d 387, 1392 (9th Cir. 1989).  The government now presents the argument that defendant's detention on the date of the warrant execution could be construed as proper because on that date defendant was subject to being arrested for felon in possession of a firearm.  Defendant agrees that his detention constituted an arrest, but argues that the arrest was not supported by probable cause.

This court concludes that probable cause existed to arrest defendant for possession of the .22 caliber revolver discovered on July 2, 2005.  Therefore, his subsequent detention during the execution of the warrant was not unlawful.

However, because the police advised defendant that his detention that day was due to the warrant, and then interrogated defendant exclusively in conjunction with the improper execution of that warrant, defendant's waiver of his constitutional rights that day cannot be construed fairly as sufficiently knowing and voluntary.

Defendant's inculpatory statements regarding possession of the .22 caliber revolver on July 2, 2005, stemmed directly from that detention and interrogation.  The police explained to defendant that day that his detention and interrogation arose directly because of the execution of the search warrant at issue.  Because that warrant was invalid and no good faith exception is applicable to excuse its execution, defendant's statements made during his detention and interrogation on July 2, 2005, are inadmissible.  *Wong-Sun*, 371 U.S. at 484.

\\\

**CONCLUSION**

Defendant's Motion to Suppress [23] is GRANTED.  Accordingly, for the reasons

provided above, defendant's inculpatory statements regarding possession of the .22 caliber

revolver made on July 2, 2005, are construed as derivative of the improper search of Apt. 3, and

the court is compelled to suppress those statements.

IT IS SO ORDERED.

Dated this __10__ day of July, 2006.


                                                    /s/Ancer L.Haggerty
                                                      Ancer L. Haggerty
                                                 United States District Judge

PAGE 11 - OPINION AND ORDER