**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* v. UHURU NAVANDA CREWS, *Defendant-Appellant.* | No. 09-30183 D.C. No. 3:05-cr-00355-HA-1 ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, Senior District Judge, Presiding

Argued and Submitted
March 3, 2010—Portland, Oregon

Filed July 23, 2010
Amended September 8, 2010

Before: Richard A. Paez, Richard C. Tallman, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

UNITED STATES v. CREWS  13681

## COUNSEL

Francesca Freccero, Assistant Federal Public Defender, Portland, Oregon, for defendant-appellant Uhuru Navanda Crews.

Stephen F. Peifer (argued), United States Attorney's Office, Portland, Oregon, and Kent S. Robinson, Acting United States Attorney, for plaintiff-appellee United States of America.

## ORDER

The opinion filed on July 23, 2010, and published at __ F.3d ___, 2010 WL 2872531 (9th Cir. July 23, 2010), is hereby amended.

On page 10624 of the slip opinion, lines 4-8: Replace <<Indeed, at oral argument, Crews was unable to provide even a hypothetical example of an individual knowingly engaging in assault by means of a deadly or dangerous weapon where that individual would have acted without the intent to cause harm.>> with <<Indeed, Crews has not provided any case in which an individual who knowingly engaged in assault by means of a deadly or dangerous weapon acted without the intent to cause harm.>>

## OPINION

M. SMITH, Circuit Judge:

We address whether a conviction under Oregon's second-degree assault statute, Or. Rev. Stat. § 163.175(1)(b), is a "crime of violence" under the Sentencing Guidelines' "residual clause," U.S. Sentencing Guidelines Manual § 4B1.2(a)(2) (2008) (hereinafter U.S.S.G.). We hold that it is, and we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 13, 2009, Uhuru Navanda Crews pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court assigned Crews a base offense level of twenty-four, based on two prior convictions. *See* U.S.S.G. § 2K2.1(a)(2). Pursuant to section 2K2.1(a)(2), a defendant is assigned a base offense level of twenty-four if he has previously sustained "at least

UNITED STATES v. CREWS                       13683

two felony convictions of either a crime of violence or a controlled substance offense." *Id.*

Crews concedes that his 1998 conviction for delivery of a controlled substance under Oregon Revised Statutes section 475.840[1] constitutes a "controlled substance offense." The district court also determined that Crews's 1990 conviction under Oregon's second-degree assault statute, Or. Rev. Stat. § 163.175(1)(b), is a "crime of violence" under Guidelines section 4B1.2(a).[2] On appeal, Crews challenges whether second-degree assault, as defined by section 163.175(1)(b), is a "crime of violence."

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo whether a conviction constitutes a "crime of violence" under the Sentencing Guidelines. *United States v. Hermoso-Garcia*, 413 F.3d 1085, 1089 (9th Cir. 2005).

## DISCUSSION

**[1]** Section 2K2.1 of the Guidelines defines "crime of violence" as that term is defined in the career offender Guideline, section 4B1.2. U.S.S.G. § 2K2.1 cmt. n.1. Section 4B1.2, in turn, sets forth three different provisions defining the term "crime of violence." *Id.* § 4B1.2(a)(1), (2) & cmt. n.1. The provision Crews focuses on, and that which we find most germane to whether subsection (1)(b) of Oregon's second-degree assault statute constitutes a "crime of violence," is Guidelines section 4B1.2(a)(2).[3] Section 4B1.2(a)(2) defines a "crime of violence" as:

---

[1] At the time of Crews's conviction, delivery of a controlled substance under Oregon law was codified at section 475.992.

[2] After granting Crews a downward variance from the sentencing range of 57-71 months, the district court sentenced Crews to 37 months.

[3] Because we hold that Oregon Revised Statutes section 163.175(1)(b) is a "crime of violence" within the meaning of Guidelines section

13684                    UNITED STATES v. CREWS

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

*Id.* § 4B1.2(a)(2) (emphasis added). The italicized language is referred to as the "residual clause."

**[2]** Crews was convicted under subsection (1)(b) of Oregon's second-degree assault statute, which punishes "[i]ntentionally or knowingly caus[ing] physical injury to another by means of a deadly or dangerous weapon." Or. Rev. Stat. § 163.175(1)(b). Second-degree assault in Oregon is a "Class B" felony punishable by a maximum of ten years imprisonment. *See* Or. Rev. Stat. §§ 161.605, 163.175(2). Therefore, Crews's prior conviction meets the threshold requirement for a "crime of violence" since it is "punishable by imprisonment for a term exceeding one year." U.S.S.G. § 4B1.2(a).

"We use the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575, 602 (1990), to determine whether a defendant's prior conviction satisfies the Guidelines definition of a crime of violence." *United States v.*

---

4B1.2(a)(2), we need not determine whether it also meets the generic definition of "aggravated assault" listed in the Application Notes to Guidelines section 4B1.2. *Cf. United States v. Granbois*, 376 F.3d 993, 995 (9th Cir. 2004) (holding that a prior conviction for abusive sexual contact under 18 U.S.C. § 2244(a)(3) was a *per se* crime of violence within the meaning of the Application Notes, and declining to consider application of the residual clause); *United States v. Jennen*, 596 F.3d 594, 600-02 (9th Cir. 2010) (holding that Washington second-degree assault with a deadly weapon statute was a crime of violence under Guidelines section 4B1.2(a)(1), without considering whether it was a *per se* crime of violence under the Application Notes).

UNITED STATES v. CREWS                13685

*Esparza-Herrera*, 557 F.3d 1019, 1022 (9th Cir. 2009) (per curiam). Under this approach, "we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008). We thus compare the statutory definition of the underlying offense to the Guidelines definition of "crime of violence." *United States v. Carson*, 486 F.3d 618, 619-20 (9th Cir. 2007) (per curiam). Therefore, we must ask whether "[i]ntentionally or knowingly caus[ing] physical injury to another by means of a deadly or dangerous weapon," Or. Rev. Stat. § 163.175(1)(b), "otherwise involves conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2).

**[3]** The Supreme Court's recent decision in *Begay v. United States* sets forth a two-step approach to our inquiry.[4] *See Begay*, 553 U.S. at 141-42; *United States v. Mayer*, 560 F.3d 948, 960 (9th Cir. 2009) (following *Begay*'s two-step

---

[4]*Begay* focused on a nearly identical definition of the term "violent felony" in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii). In the past we have made no distinction between the terms "violent felony" and "crime of violence" for purposes of interpreting the residual clause, *see, e.g.*, *United States v. Jennings*, 515 F.3d 980, 990 n.11 (9th Cir. 2008), and we recently held that *Begay*'s analysis applies to section 4B1.2, *United States v. Coronado*, 603 F.3d 706, 708-10 (9th Cir. 2010). Our sister circuits have also followed *Begay* in analyzing whether a prior state offense is a "crime of violence" under Guidelines section 4B1.2(a)(2). *United States v. Jarmon*, 596 F.3d 228, 231 n.* (4th Cir. 2010); *United States v. Johnson*, 587 F.3d 203, 207-08 & n.5 (3d Cir. 2009); *United States v. Hart*, 578 F.3d 674, 677 & n.3 (7th Cir. 2009); *United States v. Wilson*, 562 F.3d 965, 967-68 (8th Cir. 2009); *United States v. Baker*, 559 F.3d 443, 451-52 & n.8 (6th Cir. 2009); *United States v. Rooks*, 556 F.3d 1145, 1150 (10th Cir. 2009); *United States v. Almenas*, 553 F.3d 27, 34 & n.7 (1st Cir. 2009); *United States v. Gray*, 535 F.3d 128, 130 (2d Cir. 2008); *United States v. Archer*, 531 F.3d 1347, 1350 n.1 (11th Cir. 2008). The Supreme Court, too, has drawn from the Guidelines' definition of a "crime of violence" in interpreting the ACCA's definition of "violent felony." *See James v. United States*, 550 U.S. 192, 206 (2007).

13686        UNITED STATES v. CREWS

approach). First, the state offense must involve conduct that presents a serious potential risk of injury. *See Begay*, 553 U.S. at 141 (assuming that New Mexico's DUI statute involved conduct presenting such a risk). Such a showing does not require "that every conceivable factual offense covered by a statute . . . necessarily present a serious potential risk of injury." *James*, 550 U.S. at 208 (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). "Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.*

**[4]** We have little trouble concluding that "[i]ntentionally or knowingly caus[ing] physical injury to another by means of a deadly or dangerous weapon," clearly presents a serious potential risk of physical injury to another. Oregon law defines both a "dangerous weapon" and a "deadly weapon" as an "instrument . . . capable of causing death or serious physical injury." Or. Rev. Stat. § 161.015(1), (2). In addition, to be convicted under the statute, the state must prove that the defendant in fact caused the victim physical injury. *See State v. O'Hara*, 955 P.2d 313, 315 (Or. Ct. App. 1998). Hence, "the statute itself contemplates bodily harm to the victim as a prerequisite to conviction." *Johnson*, 587 F.3d at 211.

**[5]** Prior to *Begay*, we concluded our inquiry after addressing only step one. *See, e.g.*, *Carson*, 486 F.3d at 620. However, after *Begay* we must make a second inquiry: whether the state offense is "roughly similar, in kind as well as in degree of risk posed," to the enumerated offenses that appear at the beginning of the residual clause—burglary of a dwelling, arson, extortion, and crimes involving the use of explosives. *Begay*, 553 U.S. at 143; *United States v. Alderman*, 601 F.3d 949, 952 (9th Cir. 2010); *accord United States v. Smith*, 544 F.3d 781, 784 (7th Cir. 2008) (noting that after *Begay* "a finding that the offense poses a serious risk of physical injury to another is a *necessary*, but not *sufficient*, condition" for the offense to fall within the scope of the residual clause); *United*

UNITED STATES v. CREWS                    13687

*States v. Roseboro*, 551 F.3d 226, 233 (4th Cir. 2009) (holding that *Begay* rejected that circuit's earlier approach under which "an offense presented a serious potential risk of physical injury to another if the offense conduct had the potential for serious physical injury to another"), *abrogated on other grounds by United States v. Rivers*, 595 F.3d 558 (4th Cir. 2010). In order to determine whether the state offense is "roughly similar" to the enumerated offenses, we ask whether the state offense "typically involve[s] purposeful, violent, and aggressive conduct." *Begay*, 553 U.S. at 144-45 (internal quotation marks omitted); *Alderman*, 601 F.3d at 952-53

Focusing on this second step of the analysis, Crews argues that a conviction under Oregon Revised Statutes section 163.175(1)(b) does not "involve purposeful, violent, and aggressive conduct." Specifically, Crews takes issue with the "purposeful" requirement, arguing that section (1)(b) punishes "knowing" conduct, which is less culpable than "purposeful" conduct.[5] Crews notes that, contrary to the Model Penal Code's definition, Oregon defines "knowingly" as acting with an awareness of one's conduct, and does not require an awareness of the *result* of that conduct. *Compare* Model Penal

---

[5]There are four ways to commit assault under subsection (1)(b). A person might "[i]ntentionally . . . cause[ ] physical injury to another by means of a deadly . . . weapon"; "[i]ntentionally . . . cause[ ] physical injury to another by means of a . . . dangerous weapon"; "knowingly cause[ ] physical injury to another by means of a deadly . . . weapon"; or "knowingly cause[ ] physical injury to another by means of a . . . dangerous weapon." Or. Rev. Stat. § 163.175(1)(b). Crews does not dispute that to "*[i]ntentionally* . . . cause[ ] physical injury to another by means of a deadly or dangerous weapon," *id.* (emphasis added), involves purposeful, violent, and aggressive conduct and thus categorically qualifies as a crime of violence. Rather, Crews focuses on subsection (1)(b)'s less culpable mens rea of "knowingly," because " 'our categorical inquiry need focus only on the conduct falling at the least egregious end of the state statute's range of conduct.' " *United States v. Baza-Martinez*, 464 F.3d 1010, 1014 (9th Cir. 2006) (quoting *United States v. Lopez-Solis*, 447 F.3d 1201, 1206 (9th Cir. 2006)) (internal brackets omitted).

Case 3:05-cr-00355-HZ   Document 86   Filed 09/08/10   Page 9 of 16
Case: 09-30183   09/08/2010   Page: 9 of 16   ID: 7466320   DktEntry: 23

Code § 2.02(2)(b),[6] *with State v. Barnes*, 986 P.2d 1160, 1166-67 (Or. 1999) (holding that to sustain a conviction under subsection (1)(a) of Oregon's second-degree assault statute, "the state needs to prove only that defendant was aware of the assaultive nature of his conduct and that his conduct in fact caused the victim serious physical injury").

In *Begay*, the Supreme Court addressed whether driving under the influence of alcohol is the sort of purposeful, violent, and aggressive conduct that fits within the scope of the residual clause, and held that it is not. 553 U.S. at 148. While the Court did not specifically define "purposeful," it explained that this type of conduct characterized crimes committed by the armed career criminal, and noted that the ACCA was especially concerned with "the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun." *Id.* at 146. The Court reasoned that when a prior offense involves purposeful, violent, and aggressive conduct—conduct that is "characteristic of [crimes committed by] the armed career criminal," *id.* at 145 (internal quotation marks omitted)—the perpetrator is more likely to engage in similar future conduct, *id.* at 148. That is, having once been involved in "purposeful, violent, and aggressive conduct," it is "more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Id.* at 145; *accord id.* at 146 ("In order to determine which offenders fall into this category, the Act looks to past crimes . . . because an offender's criminal history is relevant to the question whether he is a career criminal, or, more precisely, to the

---

[6]Under the Model Penal Code,

> [a] person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

Model Penal Code § 2.02(2)(b).

| UNITED STATES v. CREWS | 13689 |
|---|---|

kind or degree of danger the offender would pose were he to possess a gun.").

The Court juxtaposed the kind of conduct that typifies the armed career criminal with that which does not. Under this latter category it placed strict liability crimes and crimes involving only accidental, negligent, or reckless conduct. It listed crimes which, "though dangerous, are not typically committed by those whom one normally labels 'armed career criminals.' " *Id.* at 146-47 (citing as examples "Ark. Code Ann. § 8-4-103(a)(2)(A)(ii) (2007) (reckless polluters); 33 U.S.C. § 1319(c)(1) (individuals who negligently introduce pollutants into the sewer system); 18 U.S.C. § 1365(a) (individuals who recklessly tamper with consumer products); [18 U.S.C.] § 1115 (seamen whose inattention to duty causes serious accidents)"). Moreover, the Court cited with approval a description of drunk driving as "a crime of negligence or recklessness, rather than violence or aggression." *Id.* at 146 (quoting *United States v. Begay*, 470 F.3d 964, 980 (10th Cir. 2006) (McConnell, J., dissenting in part)). Further, it noted that crimes involving the use of explosives are purposeful because "the word 'use' most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Id.* at 145 (internal quotation marks and ellipsis omitted).

Following *Begay*, our sister circuits have similarly held that crimes involving only negligent or reckless *mens reas* do not fall within the residual clause. *See, e.g.*, *Roseboro*, 551 F.3d at 242-43 (holding that, to the extent a South Carolina violation for failing to stop for a blue light required only negligent conduct, it is not a violent felony under *Begay*); *Baker*, 559 F.3d at 453 (holding that Tennessee's reckless endangerment statute is not a crime of violence under *Begay*); *Gray*, 535 F.3d at 131-32 (same with respect to New York reckless endangerment statute because it "does not criminalize purposeful or deliberate conduct"); *Smith*, 544 F.3d at 786 (holding that "those crimes with a *mens rea* of negligence or recklessness do not trigger the enhanced penalties mandated

by the ACCA"); *United States v. Herrick*, 545 F.3d 53, 60 (1st Cir. 2008) (holding that vehicular homicide involving criminal negligence is not a crime of violence under *Begay*).

**[6]** With *Begay*'s analysis in mind, we hold that subsection (1)(b) of Oregon's second-degree assault statute clearly involves "purposeful, violent, and aggressive conduct." The subsection applies when a defendant acts more than just negligently or recklessly, and punishes assaultive conduct when the "defendant was aware of the assaultive nature of his conduct." *See Barnes*, 986 P.2d at 1167. To be sure, to act knowingly in Oregon does not require knowledge that physical injury could possibly occur as a result of particular conduct, or conscious disregard of risks associated with that conduct. *See State v. Jantzi*, 641 P.2d 62, 63-64 (Or. Ct. App. 1982) (holding that where defendant knew he had a dangerous weapon and it was possible that an injury would occur, he acted recklessly, not knowingly, under Oregon law), *abrogated on other grounds by State v. Boone*, 661 P.2d 917 (Or. 1983) and *State v. Cook*, 989 P.2d 474 (Or. Ct. App. 1999), *as recognized in State v. McNair*, 39 P.3d 284, 288 (Or. Ct. App. 2002). Rather, to act knowingly in Oregon is to act with the awareness that one's conduct is of the nature described in the statute. *See* Or. Rev. Stat. § 161.085(8); *Barnes*, 986 P.2d at 1167. Acting with an awareness of the assaultive nature of one's conduct is sufficiently "purposeful, violent, and aggressive" under *Begay* to fall within the residual clause. Indeed, the conduct described in subsection (1)(b)—conduct of an assaultive nature carried out by means of a deadly or dangerous weapon—is *exactly* the type of conduct that characterizes armed career criminals and repeat violent offenders and is the type of conduct that the Court in *Begay* deemed "relevan[t] to the possibility of future danger with a gun." *Begay*, 553 U.S. at 146.

We note that while *Begay* considered "the particular statutory provision" before it, *id.* at 148, the rationale underlying its interpretation of the ACCA is particularly applicable to our

| UNITED STATES v. CREWS | 13691 |
|---|---|

interpretation of the career offender Guideline provision at issue here. First, as noted above, the terms "violent felony" in the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), and "crime of violence" in Guidelines section 4B1.2, are interpreted according to the same precedent. *See supra* n.4. Second, and even more to the point, like the ACCA, section 4B1.2 applies to "the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate and [seeks] to avoid 'unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct[.]' " U.S.S.G. § 4B1.1 cmt. background (quoting 28 U.S.C. § 991(b)(1)(B)). In other words, both the ACCA and the career offender provision of the Guidelines focus not on recidivists *in general*, but on "repeat violent offenders." *Id.* Those concerns are particularly relevant to sentences resulting from felon-in-possession crimes, such as those under 18 U.S.C. § 922(g)(1), and the corresponding Guidelines provision for those crimes, U.S.S.G. § 2K2.1.

In arguing that his crime was not "purposeful" because he was "convicted of assault without any proof that he acted with any purpose, or with any awareness of the potential result of his conduct," Crews misinterprets *Begay*'s "purposeful conduct" requirement in three ways. First, while the enumerated offenses that appear at the beginning of the residual clause require more culpable *mens reas* than recklessness or negligence, none of them requires any proof that the offender acted with any particular purpose to injure another person. *See United States v. Dismuke*, 593 F.3d 582, 592 (7th Cir. 2010) (noting that none of the enumerated crimes "require that the offender act with the specific purpose of inflicting physical harm on another"). Thus, to be "roughly similar" to the enumerated offenses, it is not necessary that a crime be committed with specific intent.

Second, *Begay* held that crimes would be sufficiently similar to the enumerated crimes to fall within the residual clause if they "*typically* involve purposeful, violent, and aggressive

13692                UNITED STATES v. CREWS

conduct." *Begay*, 553 U.S. at 144-45 (internal quotation marks omitted) (emphasis added). Indeed, under our categorical approach, section 163.175(1)(b) would fall within the residual clause "even if, on *some* occasions, it can be committed in a way that poses no serious risk of physical harm." *Id.* at 141 (citing *James*, 550 U.S. at 208-09, for that proposition) (emphasis in original). We have no doubt that the offense for which Crews was convicted—knowingly causing physical injury to another by means of a deadly or dangerous weapon—typically involves purposeful conduct. Although we could find no Oregon cases directly addressing the issue, we presume that, to be convicted under section 163.175(1)(b), a defendant must have known both (1) that he engaged in assaultive conduct and (2) that he used an instrument capable of causing death or serious physical injury. *See* Or. Rev. Stat. 161.085(8) (defining "knowingly" as "act[ing] with an awareness that the conduct of the person is of a nature [described in the statute] or *that a circumstance [described in the statute] exists*" (emphasis added)); *cf. Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1891 (2009) ("[C]ourts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element."). We have trouble imagining a circumstance in which a person could knowingly use a dangerous weapon to assault another person without intending to do so. Indeed, Crews has not provided any case in which an individual who knowingly engaged in assault by means of a deadly or dangerous weapon acted without the intent to cause harm. In short, convictions involving knowing use of a deadly or dangerous weapon typically involve "purposeful" conduct within the meaning of *Begay*. *See, e.g.*, *State v. Hampton*, 855 P.2d 621, 622 (Or. 1993) (en banc) (defendant convicted of second-degree assault for breaking a bottle over the head of a police officer); *State v. Reed*, 790 P.2d 551, 551 (Or. Ct. App. 1990) (conviction sustained under section 163.175 for knowingly banging victim's head repeatedly against a concrete sidewalk); *State v. Jacobs*, 579 P.2d 881, 882 (Or. Ct. App. 1978)

UNITED STATES v. CREWS　　　　13693

(conviction upheld where defendant placed four-year-old child in scalding hot water).

Third, *Begay* made clear that the residual clause applies to offenses involving "the deliberate kind of behavior associated with violent criminal use of firearms." *Begay*, 553 U.S. at 147. In noting that the enumerated offenses all "typically involve purposeful, violent, and aggressive conduct," the *Begay* Court explained that the conduct involved in those offenses "is such that it makes it more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Id.* at 144-45 (internal quotation marks omitted). Crews ignores the obvious fact that "knowingly caus[ing] physical injury to another by means of a deadly or dangerous weapon," Or. Rev. Stat. § 163.175(1)(b), likewise involves conduct associated with such future danger. *See Begay*, 553 U.S. at 146 (assessing "a crime's relevance to the possibility of future danger with a gun").

Our recent decision in *Coronado* does not compel a different conclusion here. There, we addressed whether, in light of *Begay*, a conviction under California Penal Code § 246.3 for discharging a firearm with gross negligence was a crime of violence under the residual clause. *Coronado*, 603 F.3d at 708. We held it was not, because the state statute "only requires gross negligence, and crimes with a mens rea of gross negligence or recklessness do not satisfy *Begay*'s requirement of 'purposeful' conduct." *Id.* at 710.

Arguably, our decision in *Coronado* contains language suggesting that only crimes involving specific intent satisfy *Begay*'s "purposeful" requirement. *See id.* at 711. There, we noted that in "other contexts" we have defined "purposeful" as "done with a specific purpose in mind; DELIBERATE." *Id.* (internal quotation marks omitted). But in those other contexts, we had no occasion to consider the issue presented here: Whether *knowingly* causing physical injury to another by means of a deadly or dangerous weapon satisfies *Begay*'s

13694            UNITED STATES v. CREWS

"purposeful" requirement. Rather, in those contexts, we considered whether crimes committed with gross negligence or recklessness were sufficiently purposeful and concluded they were not. *Id.* at 710; *Fernandez-Ruiz*, 466 F.3d at 1129-30. Today we reaffirm that more than recklessness or gross negligence is required, and more specifically hold that *Begay* can be satisfied by knowing conduct.**7**

   **[7]** In addition, we note that every circuit to have addressed the issue has held that *Begay*'s "purposeful conduct" requirement is satisfied where the underlying state offense requires the defendant to act knowingly. *See Johnson*, 587 F.3d at 211 (holding that, to the extent simple assault under Pennsylvania law is committed intentionally or knowingly, it is "by definition purposeful"); *Wilson*, 568 F.3d at 674 ("We conclude that the offense satisfies *Begay*'s purposeful conduct requirement based on the offense's mens rea of *knowingly* inflicting cruel and inhuman punishment."); *Almenas*, 553 F.3d at 34 (holding *Begay*'s purposefulness requirement "easily met" where crime required the offender to act knowingly); *United States v. Spells*, 537 F.3d 743, 752 (7th Cir. 2008) (holding that, under Indiana law, fleeing an officer in a vehicle constitutes a violent felony under *Begay* because "the flight must be done 'knowingly or intentionally' ").**8**

   **[8]** In sum, because a violation of subsection (1)(b) of Oregon's second-degree assault statute, Or. Rev. Stat.

---

   **7**We do not hold that "knowingly" *always* suffices under *Begay*, for perhaps there are some offenses that, while committed "knowingly," do not typically involve purposeful, violent, and aggressive conduct. But it suffices here.

   **8**That these states may define "knowingly" differently than Oregon does not alter our conclusion, because, as discussed above, a conviction for "knowingly caus[ing] physical injury to another by means of a deadly or dangerous weapon," Or. Rev. Stat. § 163.175(1)(b), "typically involve[s] purposeful, violent, and aggressive conduct," *Begay*, 553 U.S. at 144-45 (internal quotation marks omitted).

13694            UNITED STATES v. CREWS

"purposeful" requirement. Rather, in those contexts, we considered whether crimes committed with gross negligence or recklessness were sufficiently purposeful and concluded they were not. *Id.* at 710; *Fernandez-Ruiz*, 466 F.3d at 1129-30. Today we reaffirm that more than recklessness or gross negligence is required, and more specifically hold that *Begay* can be satisfied by knowing conduct.[7]

   **[7]** In addition, we note that every circuit to have addressed the issue has held that *Begay*'s "purposeful conduct" requirement is satisfied where the underlying state offense requires the defendant to act knowingly. *See Johnson*, 587 F.3d at 211 (holding that, to the extent simple assault under Pennsylvania law is committed intentionally or knowingly, it is "by definition purposeful"); *Wilson*, 568 F.3d at 674 ("We conclude that the offense satisfies *Begay*'s purposeful conduct requirement based on the offense's mens rea of *knowingly* inflicting cruel and inhuman punishment."); *Almenas*, 553 F.3d at 34 (holding *Begay*'s purposefulness requirement "easily met" where crime required the offender to act knowingly); *United States v. Spells*, 537 F.3d 743, 752 (7th Cir. 2008) (holding that, under Indiana law, fleeing an officer in a vehicle constitutes a violent felony under *Begay* because "the flight must be done 'knowingly or intentionally' ").[8]

   **[8]** In sum, because a violation of subsection (1)(b) of Oregon's second-degree assault statute, Or. Rev. Stat.

---

[7]We do not hold that "knowingly" *always* suffices under *Begay*, for perhaps there are some offenses that, while committed "knowingly," do not typically involve purposeful, violent, and aggressive conduct. But it suffices here.

[8]That these states may define "knowingly" differently than Oregon does not alter our conclusion, because, as discussed above, a conviction for "knowingly caus[ing] physical injury to another by means of a deadly or dangerous weapon," Or. Rev. Stat. § 163.175(1)(b), "typically involve[s] purposeful, violent, and aggressive conduct," *Begay*, 553 U.S. at 144-45 (internal quotation marks omitted).

UNITED STATES v. CREWS   13695

§ 163.175(1)(b), presents a serious potential risk of physical injury to another and "typically involve[s] purposeful, violent, and aggressive conduct," *Begay*, 553 U.S. at 144-45 (internal quotation marks omitted), we hold that it is categorically a crime of violence under Guidelines section 4B1.2(a)(2).

**AFFIRMED.**